WALTER AND MARGARET CAUGHLIN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Caughlin v. Commissioner
Docket No. 11193-92
United States Tax Court
T.C. Memo 1994-113; 1994 Tax Ct. Memo LEXIS 114; 67 T.C.M. (CCH) 2429; March 21, 1994, Filed *114 Decision will be entered under Rule 155. For petitioners: Montie S. Day. For respondent: Elaine L. Sierra. CHIECHI
CHIECHI
MEMORANDUM FINDINGS OF FACT AND OPINION CHIECHI, Judge: Respondent determined the following deficiencies in, additions to, and accuracy-related penalty on petitioners' income tax: Additions to Tax
Accuracy-Related Penalty
Section Section Section Year
Deficiency
6651(a)(1) [1]
6653(a)(1)
6662(a) 1988
$ 15,639
$ 2,931
$ 1,656
$ --
1989
3,314
--  --  663
The only issue remaining for decision is whether petitioners are liable for 1988 under section 6653(a)(1) and for 1989 under section 6662(a) for the addition to tax and the accuracy-related penalty, respectively. We hold that they are. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioners resided *115 in San Mateo, California, at the time the petition was filed. Petitioner Walter J. Caughlin (Mr. Caughlin) graduated from high school and completed two years of junior college. At no time during his college education did Mr. Caughlin take any tax-related courses. Mr. Caughlin has no special training or expertise in tax matters. At all times pertinent to this case, Mr. Caughlin (1) was employed in construction as a project manager overseeing construction projects, (2) was a part owner in an S corporation that operated a restaurant business (restaurant business), and (3) was a 50 percent owner of a piece of real property (Tahoe property). The Tahoe property was originally purchased for the purpose of building a rental cabin on it. The cabin was never constructed because there was an overabundance of property that became available on the market at the time that Mr. Caughlin and the other owner were about to begin having construction plans for the cabin prepared. Consequently, Mr. Caughlin and the other owner decided to delay building on the Tahoe land until it became prudent to construct something that would generate some kind of cash flow. During the years at issue and for approximately *116 seven or eight years prior to those years, petitioner Margaret Caughlin (Ms. Caughlin) was employed as a flight attendant for Delta Air Lines, Inc. (Delta). Prior to having been employed by Delta, Ms. Caughlin had worked for Western Airlines for approximately 15 years. On August 25, 1990, the Internal Revenue Service (the Service) received from petitioners a joint Federal income tax return for 1988 that had been signed by Mr. Caughlin on August 21, 1990, and by Ms. Caughlin on an undisclosed date. On October 1, 1990, the Service received from petitioners a joint Federal income tax return for 1989 that had been signed by petitioners on August 21, 1990, and mailed to the Service sometime thereafter. The S corporation's Federal tax forms relating to the restaurant business were prepared by a certified public accountant and were not available in time for petitioners to file their 1988 and 1989 returns on the original due dates for filing such returns -- a situation that was typical. No extension of time to file had been granted for petitioners' 1988 or 1989 return. Prior to 1978, Mr. Caughlin's father, who was an accountant, prepared Mr. Caughlin's income tax returns. Starting *117 in 1978, after Mr. Caughlin's father no longer prepared returns for him, Mr. Caughlin used various certified public accountants to prepare his tax returns. Petitioners used John T. Abbott (Mr. Abbott), a certified public accountant, to prepare their 1988 and 1989 returns. Petitioners had also retained Mr. Abbott to prepare their returns for the years 1984 through 1987. Mr. Caughlin took principal responsibility for the preparation and filing of petitioners' tax returns for 1988 and 1989, with Ms. Caughlin having had little direct involvement beyond providing her Forms W-2 for forwarding to Mr. Abbott. In order to enable Mr. Abbott to prepare those returns, Mr. Caughlin provided him with information that Mr. Caughlin considered pertinent, including any Forms W-2 issued to petitioners, interest income statements, mortgage interest statements, and information relating to the restaurant business. Mr. Caughlin did not discuss petitioners' 1988 and 1989 returns with Mr. Abbott before or after that accountant had prepared them. Nor did Mr. Caughlin review those returns, the schedules attached to them, or the computations contained in them after they were prepared by Mr. Abbott. In *118 fact, Mr. Caughlin signed the 1988 tax return that Mr. Abbott had prepared for petitioners without examining it at all. Mr. Caughlin used certified public accountants to prepare his tax returns for the years at issue and other years because he found the tax forms confusing and difficult to understand. He wanted to use certified public accountants because he believed that they knew how to prepare the forms in a proper fashion. In hiring certified public accountants to prepare his tax returns, Mr. Caughlin felt comfortable that the returns would be properly prepared. Mr. Caughlin assumed that Mr. Abbott knew how to prepare petitioners' tax returns correctly. For each of the years at issue, Ms. Caughlin received two Forms W-2 from Delta. One of the Forms W-2 that Ms. Caughlin received from Delta for 1988 (Form W-2 at issue) showed that she had $ 30,321.25 in wages and that $ 3,917.68 had been withheld from those wages. The second Form W-2 (second Form W-2) that Ms. Caughlin received from Delta for 1988 showed that she had $ 2,938.54 in wages for that year and that no tax had been withheld from those wages. Attached to the 1988 return filed by petitioners were both Forms W-2 received *119 by Ms. Caughlin from Delta. However, the wages of $ 30,321 shown on the Form W-2 at issue was not included in petitioners' income in the tax return they filed for 1988. [2] Specifically, those wages did not appear on line 7 (wages, salaries, tips, etc.) or on any other line of that return. The total wage income reported on line 7 of petitioners' 1988 return was $ 52,731. This amount consisted of (1) the $ 2,939 in wages that Ms. Caughlin received from Delta during 1988 and that was shown on the second Form W-2 she received from Delta for that year and (2) the $ 49,792 in wages that Mr. Caughlin received from his employer, Westbrook Housing Group. The amount of wage income which Ms. Caughlin received from Delta during *120 1988 and for which she received the Form W-2 at issue was approximately the same amount of wage income that Ms. Caughlin received from Delta for each of at least several years preceding 1988. Petitioners may not have realized that the $ 30,321 in wage income reflected on the Form W-2 at issue had been omitted from their 1988 return until they were audited by the Service. However, Mr. Caughlin knew the amount of petitioners' aggregate wage income for 1988 and, if he had reviewed their 1988 return before he filed it, he probably would have realized that the amount of wage income reported on line 7 of that return was substantially less than their actual wage income for that year. When Mr. Caughlin received petitioners' 1988 and 1989 returns as prepared by Mr. Abbott, he followed the written instructions that accompanied such returns as to where to sign the returns and when and where to file them along with a check for any amount due. Mr. Abbott's written instructions that accompanied the 1988 return he prepared for petitioners directed them to mail their 1988 Federal income tax return with a check for $ 11,213 [3] no later than August 15, 1990, and to make their 1989 estimated income *121 tax payments starting on June 15, 1989. Petitioners made and reported no Federal estimated tax payments for taxable years 1988 and 1989. When petitioners filed their 1988 and 1989 tax returns, Mr. Caughlin did not know the proper tax treatment of certain expenses that he incurred with respect to the Tahoe property and that he deducted as rental expenses in Schedules E of those returns. He did not know, and did not seek advice from Mr. Abbott, about the distinction for Federal income tax purposes between investment expenses and rental expenses. The record does not disclose whether petitioners informed Mr. Abbott about the circumstances surrounding their holding of the Tahoe property during 1988 and 1989. Upon notification of audit by the Service, Mr. Caughlin met with a revenue agent who requested additional information. *122 A second meeting was held with the revenue agent during which records, canceled checks, and other documents were reviewed and discussed. A third meeting took place during which the revenue agent advised petitioners that he was unable to reconcile approximately $ 30,000 in petitioners' bank accounts with the income reported in their 1988 return. At that point it was discovered by petitioners as well as the revenue agent that wage income in the amount of $ 30,321 that was reflected on the Form W-2 at issue had not been included in petitioners' 1988 return, although that form was attached to the return as filed. Upon discovery of this omission, petitioners acknowledged the error and agreed to pay any tax due resulting therefrom. Respondent made a number of determinations in the notice of deficiency for 1988 and 1989. In partial settlement of all but two of those issues, the parties stipulated as follows: (a) Petitioners conceded that they are liable for tax on the unreported wage income of Ms. Caughlin in the amount of $ 30,321, the wages reflected on the Form W-2 at issue that were omitted from their 1988 return. (b) Respondent conceded that Mr. Caughlin is entitled to treat *123 certain claimed S corporation losses as nonpassive losses for taxable years 1988 and 1989 in the amounts of $ 13,816 and $ 9,398, respectively. (c) Petitioners conceded that they are not entitled to deduct Schedule E losses for taxable years 1988 and 1989 in the amounts of $ 2,660 and $ 2,205, respectively, that are related to an investment in the Tahoe property. (d) Petitioners conceded that they are not entitled to deduct from gross income employee business expenses for taxable years 1988 and 1989 in the amounts of $ 2,336 [4] and $ 3,470, respectively. (e) Respondent conceded that petitioners (1) are entitled to deduct as miscellaneous expenses for 1988 and 1989 the respective amounts disallowed as employee business expenses (referred to in paragraph (d) above) and (2) are entitled to Schedule A deductions for 1988 and 1989 for investment expenses related to the Tahoe property *124 in the respective amounts to which they agreed as set forth in their stipulation of facts. (f) Petitioners conceded for 1988 the addition to tax under section 6651(a) for a delinquently filed return. [5]
OPINION Petitioners have the burden of establishing that respondent's determination that they are liable for the addition to tax under section 6653(a)(1) and the accuracy-related penalty under section 6662(a) for 1988 and 1989, respectively, is erroneous. Rule 142(a); , affg. ; , affg. ; *125 . Petitioners have conceded that various errors were made in their 1988 and 1989 returns. The question we must resolve is whether any part of the underpayment for each of those years resulting from such errors is due to negligence or disregard of rules or regulations. With respect to 1988, if any part of the underpayment for that year attributable to those errors is due to negligence or disregard of rules or regulations, an addition equal to five percent of the underpayment is to be added to the tax. Sec. 6653(a)(1). With respect to 1989, the accuracy-related penalty applies only to the portion, if any, of the underpayment attributable to those errors that is due to negligence or disregard of rules or regulations. Sec. 6662(a) and (b). For purposes of both sections 6653(a)(1) and 6662(a), the term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the tax laws, and the term "disregard" includes any careless, reckless, or intentional disregard. Secs. 6653(a)(3), 6662(c). Negligence also has been defined as a lack of due care or failure to do what a reasonable *126 person would do under the circumstances. , affg. ; , affg. ; , affg. ; . Petitioners argue that they relied on Mr. Abbott, a certified public accountant who prepared their 1988 and 1989 returns, and that therefore the errors in those returns were not the result of negligence or intentional disregard of rules or regulations. Respondent contends that petitioners have not satisfied their burden of showing that they reasonably relied on Mr. Abbott. We agree with respondent. The duty to file an accurate return generally cannot be avoided by placing responsibility on an agent. ; . *127 Simply hiring an accountant will not necessarily protect a taxpayer from the addition to tax for negligence. See ; , affg. . Nonetheless, it is well established that a taxpayer may avoid the addition to tax for negligence by showing reasonable reliance on the advice of a professional or expert. , affd. without published opinion ; , affd. , affd. ; ; see also In the case of claimed reliance on an accountant who prepared the taxpayer's return, *128 the taxpayer must establish that the correct information was provided to the accountant and that the item incorrectly claimed or reported in the return was the result of the accountant's error. ; ; see also Reliance on an adviser is not a defense to negligence where even a cursory review of a taxpayer's return would reveal an omission from income. ; . With respect to the wages of Ms. Caughlin that were omitted from the 1988 return, petitioners first contend that this omission was a mere mathematical or computational error. We disagree. Although the Form W-2 at issue that reflected Ms. Caughlin's wage income was attached to petitioners' 1988 return, this does not mean that the omission of such income resulted in a mere mathematical or computational mistake. The fact is that the wage income *129 in question was not included on any line or schedule of, or in any of the calculations in, that return. Petitioners also argue that they did not act negligently with respect to the omission of Ms. Caughlin's wage income from their 1988 return because they submitted the Form W-2 at issue containing that wage information to their accountant Mr. Abbott and that form was attached to the 1988 return that petitioners filed with the Service. However, Mr. Caughlin acknowledged at trial that he did not review the 1988 return prepared by Mr. Abbott. Rather, petitioners signed that return without reviewing it and, following the instructions of Mr. Abbott, filed it with the Service along with a check for the amount shown as due in the return. Although Mr. Caughlin may not have been expert in or familiar with tax concepts, he was quite familiar with the amount of wage income that he and Ms. Caughlin earned for 1988 and was aware that the amount of wage income that Ms. Caughlin received from Delta during 1988 and that was omitted from their 1988 income was approximately the same amount she had been receiving for several years prior to that year. Indeed, Mr. Caughlin admitted during his testimony *130 that if he had looked at line 7 of the 1988 return prepared by Mr. Abbott, he probably would have realized that the amount of wage income shown thereon was less than the amount of wages that petitioners received during 1988. Under these circumstances, we conclude that petitioners were negligent in omitting Ms. Caughlin's wage income from their 1988 return and that any underpayment of tax resulting from such omission was due to negligence. Petitioners have an obligation to review their tax returns before filing them. See ; Cf. . Mr. Caughlin acknowledged that neither he nor his wife did that. A review of petitioners' 1988 return, and specifically a review of line 7 of that return, would have alerted Mr. Caughlin to the fact that the wage income reported in that return was not correct. This is not a situation where there was some question as to the includibility of Ms. Caughlin's wages in petitioners' 1988 income. There was no doubt that those wages were *131 includible in their income. This is a situation where there was a lack of due care by petitioners and a failure by them to do what reasonable persons would have done, namely, review the 1988 return prepared for them by their accountant. [6] Reliance on an agent, whether or not he or she be an expert, is no excuse for filing an incorrect return where there is no doubt as to the taxability or deductibility of a particular item. See , affg. per curiam ; We further find that petitioners were negligent in omitting Ms. Caughlin's wages from their 1988 return because they must bear the ultimate responsibility *132 for any negligent errors of their agent. , affd. per curiam . Although we have not had the benefit of Mr. Abbott's testimony, it appears from the record in this case that Mr. Abbott's failure to include Ms. Caughlin's wages in petitioners' 1988 return may have been due to oversight on his part. Mr. Caughlin provided Mr. Abbott with the Form W-2 that reflected those wages and that form was in fact attached to the return that he prepared and returned to petitioners for signature and filing. Thus, Mr. Abbott's failure to include those wages in petitioners' income for 1988 was attributable to negligence for which petitioners must bear the ultimate responsibility. Having found that some portion of petitioners' underpayment for 1988 was due to negligence, they are liable under section 6653(a)(1) for the addition to tax on the entire underpayment for that year. With respect to the errors in petitioners' 1989 return that they have conceded and that *133 give rise to the underpayment for that year, on the instant record, we are not able to conclude (1) that petitioners provided Mr. Abbott with the correct information relating to the items that were erroneously reported in those returns, (2) that such errors were the result of Mr. Abbott's mistakes, or (3) if so, whether or not such mistakes were due to negligence on the part of Mr. Abbott for which petitioners would have to bear the ultimate responsibility. Although Mr. Caughlin testified that he gave Mr. Abbott Forms W-2, interest statements, mortgage interest statements, S corporation information for the restaurant business, and documents that he considered pertinent to preparation of petitioners' tax returns for 1988 and 1989, we do not know whether he gave Mr. Abbott all of the information that he would have needed to prepare those returns and/or whether that information was correct. Mr. Caughlin testified that he never spoke to Mr. Abbott before, during, or after he prepared petitioners' returns for those years. Petitioners chose not to call Mr. Abbott as a witness. Thus, we have no way of knowing how or why the errors were made. Since Mr. Abbott was not asked to testify *134 on behalf of petitioners, we may presume that Mr. Abbott's testimony would have been unfavorable as to whether (1) petitioners gave Mr. Abbott complete and accurate information relating to the items (other than the unreported 1988 wage income of Ms. Caughlin) that were erroneously reported in their 1988 and 1989 returns, (2) the errors in those returns were the result of Mr. Abbott's mistakes, and (3) if so, such mistakes were due to negligence on Mr. Abbott's part for which petitioners would be held responsible. , affd. . Accordingly, on the present record, we find that petitioners have not satisfied their burden of showing reasonable reliance on the advice of an accountant that would have relieved them from liability for the accuracy-related penalty for negligence for 1989. Therefore, petitioners are liable for that penalty on the underpayment for that year. To reflect the foregoing and the concessions of the parties, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Nor was the Federal income tax withheld that was reflected on that form claimed in petitioners' 1988 return. Respondent concedes that, in calculating any tax due for 1988, petitioners are entitled to take account of the Federal tax withheld that is reflected on that form in the amount of $ 3,918.↩
3. The check was to cover $ 8,801 for income tax due, $ 1,441 for interest owing, $ 704 for an addition to tax for failure to pay timely, and $ 267 for an addition to tax for failure to file timely.↩
4. Although the parties stipulated that the amount for 1988 is $ 2,236, on brief, both parties conceded that the correct amount is $ 2,336.↩
5. Although respondent also determined that petitioners' 1989 return was not timely filed and that such late filing was not due to reasonable cause, no addition to tax under sec. 6651(a) was due for 1989 because there was no underpayment for 1989 as a result of the tax withheld for that year.↩
6. It is noteworthy that, in signing the 1988 return, as well as the 1989 return, petitioners erroneously declared under penalties of perjury that they "examined this return and accompanying schedules and statements".↩